IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GREGORY DEAN PONDER,
                    Plaintiff,

v.                                              Case No. 6:14-cv-01362-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
                    Defendant.


MEMORANDUM AND ORDER

Plaintiff Gregory Dean Ponder appeals a final decision of the Commissioner denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. The Commissioner denied benefits after finding that plaintiff, despite his impairments, could perform jobs that existed in significant numbers in the national economy.  For the reasons discussed below, the court finds that the Commissioner applied the correct legal standards and that her findings were supported by substantial evidence. Accordingly the Commissioner's decision is affirmed.

**I. Factual and Procedural Background**

On March 24, 2010, plaintiff filed an application for SSI benefits. His claim was denied initially on May 3, 2010, and again upon reconsideration. Plaintiff then requested an evidentiary hearing before an Administrative Law Judge (ALJ). On June 27, 2013, plaintiff appeared with counsel in Wichita, Kansas, for a video hearing

conducted by ALJ Robert Milton Erickson in San Francisco, California.  Plaintiff testified at the hearing, as did (by telephone) vocational expert Jim Van Eck.

On July 26, 2013, the ALJ issued a written decision denying plaintiff's application. Dkt. 9 at 17. Using the five-step analysis called for by the regulations, the ALJ first found that plaintiff had not engaged in substantial gainful activity since the application date (March 24, 2010). *Id*. at 19. Second, he found that plaintiff suffered from the following severe impairments: degenerative joint disease (DJD) of the spine; DJD of the right knee; status post partial amputation of the right index finger; major depressive disorder; hypertension; and alcohol abuse. *Id*. Third, he found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in the regulations. *Id*.

The ALJ next determined plaintiff's residual functional capacity (RFC). He found plaintiff could perform light work (as defined by the regulations) except with the following limitations: stand/walk for about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day; climb ropes, ladders and scaffolds no more than occasionally; stoop, crouch, kneel and crawl no more than occasionally; climb stairs no more than frequently; avoid extreme cold; and perform no more than simple repetitive tasks. *Id*. at 20.

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work. *Id*. at 23. Finally, at step five, the ALJ found that, considering plaintiff's age, education, work experience and RFC, there are jobs in the national economy he can

perform, including fast food worker, housekeeper, and stock work/price marker. *Id.* at 24.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (*citing Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful

work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (*citing Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).  The steps are designed to be followed in order.  If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (*citing Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether

4

the claimant can either perform his or her past relevant work or whether he can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (*citing Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy. *Id.*

### III. Analysis

Plaintiff challenges the ALJ's ruling on three grounds. Dkt. 12. First, he contends the ALJ committed prejudicial error by finding that plaintiff has a high school education. *Id.* at 13. Second, he argues the ALJ should have found that he has a less than occasional ability to stoop, which would have eroded the available base of light work. *Id.* at 15. Lastly, plaintiff argues the ALJ erred by failing to consider his diminished bilateral manual dexterity resulting from partial amputation of his right index finger.

1. <u>High school education</u>. Plaintiff's first argument fails because the error he cites had no bearing on the outcome of his case. It is true that the ALJ erroneously stated in his written order that plaintiff had a high school education. The ALJ also referred to (but did not apply) Medical-Vocational Rule 202.14, which requires at least a high school degree. The uncontroverted evidence in the record is that plaintiff left high school shortly before graduation. He testified that he "left in the 12th grade a few weeks before school was out" because he had a fight. Dkt. 9 at 45. Nevertheless, the ALJ's finding that plaintiff could perform certain unskilled jobs in the national economy

clearly took into consideration his true level of education. The testimony of the vocational expert, upon which the ALJ relied in making his findings, was premised upon a hypothetical person with plaintiff's RFC limitations "being age 50 to 54 with an 11th grade education and the [same] past work experience as the claimant." Dkt. 9 at 56.

Plaintiff's claim that this discrepancy somehow prejudiced him under the Medical-Vocational Rules is also unavailing. The ALJ noted that if claimant *had been able to* perform the full range of light work, a finding of "Not Disabled" would have been directed by Rule 202.14. Plaintiff correctly notes that this rule applies to high school graduates. But the same finding would have been directed by Rule 202.11, which applies to a person with a limited (including 11th grade) education. *See* 20 CFR Pt. 404, Subpt. P, App. 2. In any event, plaintiff could not perform the full range of light work, so the ALJ relied upon the testimony of the vocational expert rather than apply the Medical-Vocational Rules. As noted above, the VE's testimony was based on a person with an assumed eleventh grade education, and the unskilled jobs that he identified did not require a high school graduate. Accordingly, the ALJ's erroneous written statement that plaintiff had a high school education had no effect on his ultimate finding that plaintiff was not disabled. *See Palomo v. Barnhart*, 154 Fed.Appx. 426, 430, 2005 WL 3087881 (5th Cir. 2005) (ALJ's erroneous finding of high school education was harmless where ALJ found claimant could perform unskilled work); *Hatcher v. Apfel*, 167 F. Supp. 2d 1231, 1238 (D. Kan. 2001) (erroneous finding of high school education was harmless); *Morgan v. Colvin*, 2015 WL 5612039, *9 (E.D. Ky. 2015); *Jenkins v. Astrue*, 2011 WL 2749599, *8 (M.D. Ala., July 15, 2011).

2. <u>Inability to stoop</u>. Plaintiff's brief includes an extensive discussion of the effect of an inability to stoop on the base of light work. Dkt. 12 at 15-19. The import of this is unclear until plaintiff's reply brief is examined, in which he appears to argue that the ALJ erred by rejecting plaintiff's testimony that he could not stoop. *See* Dkt. 19 at 3-4.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)).

Plaintiff testified that his symptoms – including an asserted inability to bend over – prevented him from working. The ALJ found that plaintiff's medically determinable impairments could be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. In so finding, the ALJ properly considered both the objective and subjective evidence in the record. He reviewed the (somewhat sparse) medical evidence, including the results of a consultative evaluation by James Henderson, M.D. Henderson noted that plaintiff had no history of physical therapy, MRI testing, epidural injections, or use of a TENS unit, and he was not taking any medications. Henderson found that, although plaintiff had hypertension, "slightly diminished" range of motion in the cervical and lumbar spine, moderate difficulties

with hopping, squatting and arising from a seated position, and mild difficulty with heel and toe walking, his gait and station were nevertheless stable, he had no muscle spasm, no assistive device was required, and he had no difficulty getting on or off of the examining table. Dkt. 9 at 220-23.

In assessing the credibility of plaintiff's testimony that he had severely limiting symptoms, the ALJ also noted that diagnostic studies in the record revealed no acute findings, there were no treatment notes after the application date, and plaintiff had not been prescribed any medications. He also considered evidence that plaintiff could do light housekeeping without assistance, go out by himself every day, take public transportation, manage his personal care, and prepare meals. Dkt. 9 at 22.

Plaintiff complains that the ALJ erred by giving any weight to the opinion of consultant James P. Cole, M.D. *See* Dkt. 19 at 3-4. Cole affirmed as written an RFC determination by single decision maker Sarah J. Carnahan which found that plaintiff could perform light work with postural limitations, including occasional stooping. Dkt. 9 at 255. Plaintiff questions whether Cole engaged in "manipulation" by stating that plaintiff has "slight spondylosis," because Carnahan's notes included a reference to a 2009 x-ray "indicating Moderately advanced spondylosis." Dkt. 9 at 250. As an initial matter, this issue was not properly raised in plaintiff's opening brief, meaning the Commissioner was deprived of any opportunity to address it. Regardless, plaintiff has cited no medical evidence to undermine the ALJ's finding that plaintiff could perform light work with occasional stooping. Cole concluded from his review that plaintiff

could occasionally stoop (as had Carnahan), and Henderson's review would likewise tend to support a finding that plaintiff could stoop at least occasionally.

In finding that plaintiff's testimony concerning his subjective complaints was not entirely credible, the ALJ properly considered all of the evidence and linked his findings to substantial evidence in the record, including the foregoing. Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013).  Because the ALJ's credibility finding was supported by substantial evidence, it must be affirmed.

3. <u>Manual dexterity</u>.  Plaintiff's final argument is that the ALJ erroneously failed to find that plaintiff had diminished manual dexterity from amputation of the tip of his right finger and erroneously failed to consider the impact of that limitation on the jobs plaintiff could perform.  Dkt. 12 at 19.

The ALJ reviewed the objective and subjective evidence pertaining to the partial amputation of plaintiff's finger. Dkt. 9 at 21. Among other things, he noted that plaintiff had no post-surgical complications and there were no follow up treatment notes, in part because plaintiff did not show up for a scheduled appointment in August 2009. *Id.* He also noted that Dr. Henderson's examination showed that, despite the partial amputation, plaintiff was able to pick up a coin, open a door, and fasten a button, all of which indicated that plaintiff had no significant limitations on manual dexterity. Henderson's examination also showed that plaintiff had 30 pounds of grip strength in his right hand and 20 pounds grip strength in his left hand. Dkt. 9 at 222.  Henderson

noted no limitations on manual dexterity. Additionally, Dr. Cole affirmed an RFC finding that no manipulative limitations were established. The ALJ elsewhere cited evidence that in activities of daily living, plaintiff could manage his personal care and prepare meals. In contrast, plaintiff cited no evidence that any physician had issued any restriction on use of his hands or found a limitation on his manual dexterity. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The foregoing provided substantial evidence for the ALJ's RFC determination that plaintiff could perform light work without any specific limitation on manual dexterity.

**IT IS THEREFORE ORDERED** this 21st day of January, 2016, that the final decision of the Commissioner denying plaintiff's application for SSI disability benefits is AFFIRMED.

_____s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE